## Stoner *versus* Zimmerman.

1. To effect a conversion of land into money under the terms of a will, the power to sell must be absolute and unconditional.

2. A testator directed his executors to take charge of and lease his real estate *for fifteen years* from the date of his will; and at the expiration of that time they were either to sell it in fee simple and divide the amount between his wife, if then living, and his children, *or to have it "proportioned and valued" by three men*, so as to accommodate as many of his children as it would allow of, "*if it be their wish at that time to have it done so*," they who take a part to pay to the widow and the remainder of the children, each their full proportion. *Held*, that the power to sell being *conditional*, the proceeds of the real estate, after sale by the executors, was distributable as *real* estate.

3. Where the interest of a devisee in land has been improperly sold by the executor, the former may waive the wrong and recover the money from the administrator of the estate of a claimant to whom the executor erroneously paid it.

ERROR to the Common Pleas of *Dauphin county*.

This was an action of *assumpsit* by George Zimmerman and Barbara his wife, late Barbara Stoner, *v.* Elizabeth Stoner, administratrix of Henry Stoner, deceased, to recover a sum of money which Henry Stoner received in his lifetime, and on part of plaintiff alleged to belong to his daughter Barbara, out of the estate of her deceased grandfather, after the death of her mother. " The *narr.* was filed on the 24th March, 1851. Pleas *non assumpsit* and *non assumpsit infra sex annos*." Barbara, the wife of George Zimmerman, having died since the institution of this suit, her death was suggested upon the record on the 5th May, 1851, and letters of administration having issued upon her estate to her husband, one of the plaintiffs below, he was substituted as plaintiff on the 7th February, 1852.

The facts of the case, in the order of their occurrence, were as follows :

John Alleman, the father of Martha Alleman, the mother of Barbara Zimmerman, one of the plaintiffs, having made his last will and testament, dated 6th July, 1809, died previous to the 21st October, 1811, seised and possessed of a tract of land in Ohio, house and lot in Middletown, and the homestead farm ; on which last-named day his will was found, and letters testamentary issued thereon to Jacob Parthemer and Christian Alleman, the executors named in the will. He left a widow and thirteen children.

By his will he directed his *personal* estate to be sold, and the proceeds divided—his wife taking one-third, and the executors paying a share to each child—the children taking share and share alike, and then he adds, " paying regard to the sums by me *already advanced*, agreeable to the charges I have made against them, so

[Stoner v. Zimmerman.]

as to proportion each alike. Also, I direct, that my executors hereafter named, have the care of my real estate, wherever it may lie, for fifteen years from the date of this my last will, to be by them leased or rented as they shall think to the best advantage for that length of time, and the rents, issues, or profits arising therefrom, to be by them divided yearly between my wife and all my children, in the proportion and in like manner as above mentioned; and at the expiration of the fifteen years, I direct that my executors hereafter named, either sell all my real estate, which I hereby fully empower them to do, and convey in fee simple, and divide the amount arising therefrom, between my wife, if at that time living, and all my children, in the order and manner I have directed my personal property to be divided; or to have it proportioned and valued by three judicious and disinterested men, so as to accommodate as many of my children as it will allow of, *if it be their wish at that time to have it done so*, them taking a part to pay to my wife, and the remainder of my children, each their full proportion as above mentioned."

On the 12th September, 1820, *Martha* Alleman, a daughter of John Alleman, the testator, intermarried with Henry Stoner, and died in April, 1825, leaving a child named Barbara, who was born on the 5th of November, 1824. After renting out the farm for fifteen years, according to the directions of the will, the executors of John Alleman, in 1828, sold the farm for $7115, the land in Ohio having been sold in 1826, for $32, and the house in Middletown, for three hundred dollars, *but when, was not proved*. On the 7th of July, 1829, Henry Stoner joined with other heirs of John Alleman, deceased, and the widow, in releasing the executors from all claims on account of the estate. Afterwards, in 1831, a final account was settled by the executors, embracing the proceeds of rents and purchase-money of land, and stating a balance of $4743.08. This account was confirmed on 3d September, 1833. In November, 1838, the widow died. About 1844 Barbara, the daughter of Henry Stoner and Martha his wife, married George Zimmerman, the plaintiff, and in August, 1847, Henry Stoner died. On the 7th June, 1849, Zimmerman and his wife brought this suit against the administratrix of her father's estate, to recover her mother's share of the money arising from the sale of the real estate of her grandfather John Alleman. After suit being brought, to wit, in August, 1850, Mrs. Zimmerman died.

On the part of the plaintiffs testimony was given as to a declaration by Henry Stoner, that certain money which he had received from one of the executors of the will of John Alleman, he did not consider as *his* money. The witness said that the money came from the sale of Alleman's *real* estate.

A release was given in evidence, executed by Henry Stoner and

[Stoner *v.* Zimmerman.]

others, by which the parties who executed it acknowledged to have received from one of the executors of the will of John Alleman, the sums thereinafter specified as having been received by them respectively, viz. "the balance in full due to each of us," and in the hands of the said executor—Henry Stoner acknowledging the receipt of $107.29; he acting in the matter in right of his wife. The widow of John Alleman acknowledged the receipt of $2371.68, stated to be the amount of her dower in the real estate of the said John Alleman, deceased; it being stated that the sums so specified and received were in full satisfaction and payment of all such sums of moneys, &c., as are bequeathed to them in the real and personal estate of the said John Alleman; and releasing the executor.

The material question was, whether the money thus received by Henry Stoner arising from the proceeds of sale of John Alleman's real estate, was to be considered as personal or as real estate. If as *personal* estate, Henry Stoner was entitled to receive it in right of his wife Martha; if as *real* estate, it belonged to his child by her, viz., Barbara, one of the plaintiffs.

On the part of the plaintiff it was contended in the Court below that under the facts and the will, the plaintiff was entitled to recover 1-13th part of the proceeds of the sale of the land in Ohio, and of the homestead farm, because the power contained in the will of Alleman, to sell his real estate, *was not positive and unqualified*, but contingent, depending upon the exercise of the will of any of the heirs of the testator at and after the 9th July, 1824, and therefore was not to be regarded as *money*, but as land. That the same not having been sold until after the death of *Martha* Stoner, wife of Henry Stoner, one of the daughters of the testator, her share in the real estate of her deceased father descended *as land*. That the real estate having been sold by the executors after her death, and the proceeds of his wife's share therein received by Henry Stoner, his daughter Barbara was entitled to recover the same from his estate, with interest thereon from the time of its receipt, she being the only child of Martha, the first wife of Henry Stoner.

On the part of the defendant it was contended, *inter alia*, that John Alleman having by his will directed his executors, at the end of fifteen years from the date of his will, to sell his real estate, and divide the money, or to have it proportioned and valued, so as to accommodate as many of his children as it would allow of, if it be their wish at that time to have it so done; the heirs or legatees never having asked to have it appraised, the entire power vested absolutely in the executors—and the land having been sold by the executors, and the heirs having received

[Stoner v. Zimmerman.]

their respective shares of the money, was equivalent to an express direction to the executors to sell; and that the proceeds of sale were to be considered as *personal estate*, to a share of which Henry Stoner was entitled in right of his wife, as surviving husband—that he was entitled to her share absolutely; and that therefore the defendant, as administratrix of his estate, was not liable in this action. Further, that if the proceeds of said sale were to be considered as *real* estate, the defendant was not liable for more than it was proved that Henry Stoner had received, viz., $107.29.

On the trial points were submitted on the part of the defendant, viz. :

1. That by the legal construction of the will of John Alleman, deceased, his real estate is to be considered as changed into money for the purpose of distribution among his widow and children, and is therefore to be considered as personal estate from the time of his decease.

2. That the children not having elected after July, 1824, to take it as real estate, and the land having been sold under the provisions of the will, Henry Stoner had a right to receive the share of his wife in the character of surviving husband. If the children had elected to take it as real estate, they must all have joined.

3. That this action cannot be maintained against the administratrix of Henry Stoner, deceased, even if he received the money of the executors of John Alleman, deceased, inasmuch as there is no *privity of contract or estate* between the plaintiff and Henry Stoner. If Henry Stoner received money and was not entitled to it, then it presents the case of a mispayment, and the plaintiff's remedy is against the executor and not Stoner.

4. If the money received by Stoner is to be considered as *real* estate, then the plaintiff cannot recover, as an administrator cannot maintain an action for *real* estate, neither can real estate be recovered in an action of *assumpsit*.

The case was tried before PEARSON, J. He observed to the jury that "Alleman's executor settled an account of his *personal* effects on 24th November, 1813, and a supplemental account, embracing the proceeds of the rents and purchase-money of his real estate on 3d May, 1831, which was confirmed on 3d September, 1833. On 7th July, 1829, Henry Stoner, and other heirs of John Alleman, including his widow, released the executors from all claims on account of said estate, and acknowledged that they had received the same *in full*, each specifying the amount received on account of the land in Ohio, and acknowledging the payment of the balances due them respectively. The widow receipts to the executors in full, and as though she was entitled in her own right;

2 L

[Stoner *v.* Zimmerman.]

and Henry Stoner acknowledges that he received the share of purchase-money of land in Ohio, and the sum of $107.29, which he admits to be the balance coming to him in full. Under the facts proved, you can therefore have but little difficulty in coming to the conclusion, that Henry Stoner received the whole share of money arising from the sale of the homestead farm and the land in the state of Ohio, after his wife's death; but as the plaintiff has failed to show that the house and lots in Middletown were sold after that period, he has established no claim to recover that portion of the money. He was entitled to the rents so long as the real property remained unsold, and to the interest of the money so long as he lived, as tenant by the curtesy, provided the estate descended to his wife, as lands of which she died seised. If this property had *definitely* and *imperatively* affixed to it, the character of money by the will of John Alleman, then Henry Stoner had a right to receive and retain it. If it descended to his wife as land, he had only the use of it for life, and his estate must now account for it to his daughter, the heir-at-law of his deceased wife.

" There is no principle better settled in equity, than that money directed or agreed to be laid out in land, is to be considered as such, and *e converso* land, ordered or agreed to be converted, is considered as money. But to establish a conversion the will must direct it absolutely, or out and out, irrespective of all contingencies, and independent of all discretion: 1 *Hoff.* 203; 7 *Dana* 11; 3 *Wheaton* 563; 1 *Williams on Executors* 454–5; *Jarman on Wills.* The direction to convert must be positive and explicit, and the will, if it be by will, or the deed if it be by contract, decisively fix upon the land the quality of money: 10 *Barr* 132. It must imperatively direct that the land shall be sold. In 1 *Harris* 260, the direction was to sell, " if the majority of my children be agreed;" and it was held not to effect a conversion. In 9 *Watts* 145, the testator ordered his land to be sold, when his youngest child arrived at full age, " if his wife agreed," and held not to work a conversion. Judge KENNEDY says the sale must be absolutely and positively directed, and the land is then converted into money from the time of the testator's death."

\*          \*          \*          \*          \*          \*          \*

" In the will under consideration, the testator says: ' I direct that my executors *either* sell all my real estate (which I hereby fully empower them to do, and convey in fee simple), and divide the amount arising therefrom between my wife,' &c., ' or to have it proportioned and valued by three judicious and disinterested men, so as to accommodate as many of my children as it will allow of, *if it be their wish at that time to have it done so*,' those taking a part to pay the others, &c. Now here is no *positive direction* to

[Stoner *v.* Zimmerman.]

sell, but on the contrary, it is left discretionary with the heirs; to have it sold or not is left for their future determination. At the time of Mrs. Stoner's death, that point had not been determined as to the homestead or land in Ohio. It had, we must presume, in regard to the house and lot in Middletown, as that had been advertised and probably sold. The homestead farm and land in Ohio then descended to Mrs. Stoner, as real estate. She might have elected to take her interest in land, by a proceeding in partition, as provided in the will; and being so vested at the time of her death, no subsequent election on the part of her husband and the other heirs, can divest or convert it into money. Her husband was entitled to the use of the land during life as tenant by the curtesy, as the fee had descended to, and vested in the wife, not in reversion, but in *præsenti.*

" The greatest difficulty in regard to the construction of this will, is in determining whether the interposition of the heirs is required to prevent a sale or effect it. If it requires them to act in order to cause a sale, then the wife of Stoner could not make any election, being a *feme covert;* but it is sufficient to exclude it from the rule, that the directions to sell are not explicit and positive; that the power does depend on the discretion of the heirs or executors; that it is not absolute and irrespective of all contingencies. We therefore say in answer to the defendant's first point, that this estate cannot be considered as personal for the purposes of distribution, but descended *as land.*

" Henry Stoner had a right to the use of the real estate of his wife during his life, and the same having been sold by the executors, he could lawfully receive the interest of the money during his life, in lieu of the use of the land.

" It did not require all the heirs to join in directing or permitting a sale; either one could have elected to take his or her part as money, or had it converted; but that point is unimportant.

" 3. There is sufficient privity between Henry Stoner's administrator and Mrs. Zimmerman's representatives to sustain this action. The money was received by him to hold during life, in lieu of the land sold, and to go to his daughter after his death. It may have been a mispayment on the part of John Alleman's executors, and' they might be held accountable; but Mrs. Zimmerman is not bound to look to them, but may call on Henry Stoner's estate. *She can recover no more from him than the money he actually received.* See 2 *Yeates* 268, Durdon *v.* Gaskill.

" 4. Where a person's lands or goods are improperly sold, as in the present case, the owner may either claim the original article in specie, or waive the tort and go for the money as received for their use; and although an administrator cannot sue to recover land, yet where it has been converted into money, he may sustain

an action of *assumpsit* for money had and received. The plaintiff is both administrator and heir of his wife, and by the present recovery will preclude all claims to the land hereafter. The defendant, if living, would be estopped from denying the regularity of the sale, if he encouraged and acquiesced in it, and received the proceeds. We are to presume that he received it for the lawful purpose of holding it during his life, as he could have held the land, and for payment over to his daughter on his death. This suit was brought to enforce that duty.

" The plaintiff is entitled to recover one-thirteenth part of $4743.08, on account of the sale of the homestead farm, with $2.46 received from the land in Ohio, with interest thereon from the 8th August, 1847, the time of Henry Stoner's death ; and cannot recover on account of the Middletown property or on the mispayment to John Alleman's widow."

To this charge the defendant's counsel excepted.

Nov. 23, 1852. Verdict for plaintiff for $483.81.

It was assigned for error : 1. The Court erred in the charge to the jury, in negativing the first point put by defendant's counsel. 2. The Court erred in not answering the defendant's second point in the affirmative. 3. The Court erred in saying to the jury : " Under the facts proved, you can therefore have but little difficulty in coming to the conclusion, that Henry Stoner received the *whole share* of money arising from the sale of the homestead farm, and the land in the state of Ohio, after his wife's death," &c., there being no evidence before the jury to warrant them in finding a larger sum against Henry Stoner's estate, than the amount set out in the release, to wit : $107.29. The fourth was with respect to the amount the plaintiff was entitled to recover, if. he was entitled to recover any amount.

*Alricks,* with whom was *Kunkel,* for plaintiff in error.—1st. As to the first assignment. Land directed to be sold and changed into money for the purpose of distribution, is considered in law, as money from the decease of testator: Miller *v.* Meetch, 8 *Barr* 425 ; Stuck *v.* Mackey, 4 *W. & Ser.* 196 ; Beatty *v.* Byers, 6 *Harris* 105.

There is no force in the argument used, that the sale here was *conditional* and not absolute, for in every case relied upon to support that position, it will be found that there was a prerequisite to the sale, in the nature of a condition precedent, without the performance or happening of which the sale could not take place. But here the children were not required to consent to the sale, *nor to do any act before the sale could take place ;* they were merely at

[Stoner v. Zimmerman.]

most *permittea* to act, and the sale was to take place absolutely, unless the children expressed a wish to have the land proportioned, &c., which they did not do. In the case of Wharton v. Shaw, 3 *W. & Ser.* 124, the direction to the executors was to sell, convey, or *alter* the estate—and it was held that a sale worked a conversion into personalty, which passed to the personal representative, although the power vested in the executors was discretionary.

2d assignment: Martha Alleman, the wife of Stoner, died after the end of 15 years from the date of the will, and after the executors had a right to sell—and she and the other heirs having expressed no wish to have the land proportioned and valued, it is a fair presumption after so great a lapse of time, that the children agreed to consider the land as personal estate, under the will, for they had a right to take as land or money: Burr v. Sims, 1 *Wharton* 252.

3d assignment: The Court submitted to the jury the fact that Henry Stoner had received the whole share of his wife in her father's estate—of which there was no evidence; and which was in the face of the plaintiff's own evidence, as shown by the release. The plaintiff could not legally recover from the estate of a deceased man more than was proved to have come to his hands.

The remarks as to the *fourth* assignment referred to the amount which the plaintiff was entitled to recover, if entitled to recover at all.

*Fisher*, for defendant in error.—The general principle established by the cases is, that to operate a conversion in law of real estate into personalty, under the provisions of a will, the sale must be directed in absolute and unqualified terms, irrespective of contingencies and independent of all discretion: *Leigh & Dalzell on Eq. Conversion* 15, 5 *Law Lib.*: *Newland on Contracts* 54; 2 *Kent* 230, note; 2 *Story's Eq.* sec. 1214; 5 *Vesey* 388; 8 *Id.* 227; 1 *Hoff.* 203; 7 *Dana* 11; 1 *Jarman on Wills* 477; 1 *Harris* 260, Nagle's Appeal; 10 *Barr* 131, Bleight v. Bank; 9 *Watts* 145, Henry v. McCloskey. In the case in 1 *Baldwin* 184, the time of sale was *fixed.* In this case the sale was not to be made if as many of the children as it would accommodate wished to have it proportioned and valued. In the case of Wharton v. Shaw, 3 *W. & Ser.* 124, cited on the part of the plaintiff in error, the power to sell, &c., was unqualified.

It was contended that Henry Stoner received the 1-13th of $4703.08, on account of the sale of the homestead farm.

The opinion of the Court, filed July 25, was delivered by

Knox, J.—To convert land into money, the direction to sell must be absolute and unconditional. In this case, the sale by the

[Stoner *v.* Zimmerman.]

terms of the will depended upon the choice of the widow and children of the testator. In the absence, therefore, of a positive direction to sell, the estate retained its original character as land, and so passed under the will, and by descent to Mrs. Zimmerman, who was entitled to recover the money received for her portion from the representatives of Stoner.

The charge of Judge PEARSON contained a full, clear, and correct exposition of the law of the case, and the judgment is affirmed for the reasons therein given.

Judgment affirmed.