## Hunt's Appeals.
## Lehman's Appeals.

1. A covenant made by a decedent in his lifetime, by which he bound himself " to be responsible for, and guarantee the payment of," the interest on a mortgage until the mortgaged premises should be so improved as to constitute adequate security for the mortgaged debt, survives the death of the covenantor, and can be enforced against his personal representatives, so as to recover interest accruing thereafter.

    Quain's Appeal, 10 Harris, 510, explained.

2. The lien of such a covenant as above mentioned can only be continued against the covenantor's real estate by bringing suit thereon within five years after his death, or by filing a copy of said covenant within that period in the proper office, as directed by the Act of February 24, 1834, § 24, P. L., 77.

3. A mere testamentary power of sale, vested in executors to sell real estate, will not work a conversion. There must be an intent to convert, either express or implied.

January 21, 1884.   Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Three Appeals of Benaiah S. Hunt, remaining executor and trustee under the will of John H. Jones, deceased, from the decrees of the Orphans' Court of Philadelphia, awarding distribution of the estate of said John H. Jones, deceased: Of July Term, 1883, Nos. 41, 213 and 214.

Appeal of Edwin W. Lehman and John L. Buzby, trustees of the estate of William Crean, deceased, from the same decrees: Of July Term, 1883, No. 120.

Appeal of Emily Lehman from the same decrees: Of July Term, 1883, No. 121.

These five separate appeals were argued together, and involved the same facts.   John H. Jones died September 21, 1874, having appointed Benaiah S. Hunt and George N. Watson executors of his will, in which he gave them the following power of sale:

"First. To sell all or any part of the real estate, without liability on the part of the purchaser to see to the application of the purchase money, and the proceeds of sale to reinvest from time to time, if practicable, in irredeemable ground rents, upon the same trusts. . . . . . And thereby authorize and empower them, and the survivor of them, to sell and dispose of all or any part of my estate, real or personal, for the payment of my debts and the legacies which I have given, without liability on the part of the purchaser to see to the application of the purchase money."

The decedent, at the time of his death, was seised and

possessed of real and personal estate of large value, and was heavily indebted. His executors filed an account in 1878, which was referred to E. Coppée Mitchell, Esq., as auditor, who filed three reports upon it. Subsequently, the executors sold some of the decedent's real estate for the payment of debts, and the same auditor was appointed to distribute the fund.

From the several reports of the auditor it appeared that in December, 1873, the decedent, John H. Jones, agreed to purchase from Edwin W. Lehman and John L. Buzby, trustees of the estate of William Crean, deceased, two lots of ground in the twenty-fourth ward, one of them situate at the north-east corner of Eadline and Forty-fifth streets, for the purpose of building upon them, and at his request the said trustees conveyed the property to one William S. Kite in fee, by deed dated December 27, 1873. The whole purchase-money of this lot was secured by eight purchase money mortgages bearing even date with the deed, each to secure the payment of $1166.67, with interest, said lot being subdivided into eight smaller lots, one of which lots was described in each of said mortgages. The other lot, purchased at the same time by the decedent from the claimants, was situated on the east side of Forty-fifth street at the distance of seventy feet south of Seneca street, and was also conveyed to the said Kite, the whole consideration being secured by two bonds and mortgages given by Kite to the claimants, each of said mortgages being for $1020.83, and secured upon a piece of said lot.

On December 31, 1873, the said William S. Kite and wife, by deed of that date, conveyed the said lots of ground to Edwin M. Hunt and J. Dallas Hall in fee, subject to the payment of the ten above-mentioned mortgage debts.

On January 22, 1874, the decedent entered into a written agreement with the claimants, in which the transactions above mentioned are recited, and the said John H. Jones covenanted and agreed: "To be responsible for, and guarantee the payment of the interest upon each of the said ten several indentures of mortgage above mentioned, as the same shall accrue unto the said Edwin W. Lehman and John L. Buzby, executors and trustees as aforesaid, until such time as the lot or subdivision of said larger lots shall be improved to fully secure the mortgage debt thereon secured."

This agreement was signed and sealed by the decedent. The lots of ground described in the agreement have not been improved up to the present time.

In 1874, Jones made an agreement, exactly similar to the above, with Emily Lehman, which recited the purchase from

9 Outerbridge.—9.

her, by Jones, of a lot on Transcript and Forty-fifth streets ; a conveyance by her to Kite, dated July 6, 1874; seven mortgages by Kite to her, of even date, one for $1458.33, five for $1166.67 each, and one for $875, with interest thereon payable half-yearly; and Jones covenanted to pay the interest in the same words as those contained in his covenant with Lehman and Buzby (supra).

Upon the above facts arose the question in—

### Hunt's Appeal, July Term, 1883, No. 41.

In the distribution of the personal property, the said Lehman and Buzby, trustees, etc., presented a claim for interest on their mortgage up to January 1st, 1883, amounting to $5,460, under the covenant of decedent, to be responsible for the same; a similar claim for $3,820 was presented in behalf of Emily Lehman.

These claims were objected to by the accountants:

" 1. Because neither Jones nor his executors have any power to comply with this covenant to build by improving these lots which were conveyed to Kite and are now vested in strangers.

" 2. Because in that view of the case, the covenant is a perpetual covenant, which does not bind the estate of a decedent, except as to the land expressly pledged for it.

" 3. That since the claimants have two funds from which to get their money, they ought to exhaust the mortgaged premises upon which they have a first lien, before they can come here to disappoint other creditors of the general estate."

The auditor overruled the first of these objections on the ground that the conveyances to Kite, Hunt and Hall, having been made before the execution of Jones's covenant, were made with the knowledge of Jones, if not by his direction; and that he could not by a voluntary conveyance escape the consequence of his express covenant. As to the other objections he reported as follows:

" 2. The second objection presents a more serious question. In support of it Mr. Olmsted cited Quain's Appeal, 10 Harris, 510; Williams' Appeal, 11 Wright, 283. Quain's Appeal, which has since been affirmed and adhered to by the Supreme Court, was the case of a ground rent, in which it was held that the executors of a deceased covenantor in a ground-rent deed are not bound to pay, out of assets in their hands, ground-rent accrued after his death, the reason given being that the covenant to pay rent is a perpetual one, which would forever prevent the settlement of the estate, and make the office of executor as perpetual as itself. Subsequently the District Court of Philadelphia, in a learned opinion by Judge STROUD, decided that suit might be maintained against an administrator

upon the covenant of his decedent for ground-rent accrued since his death, but that the judgment should be restricted to the land out of which the ground-rent issued. Gardiner *v.* Painter, 3 Philadelphia Reports, 365, which was afterwards approved by the Supreme Court in Williams' Estate, 11 Wright, 283, in which case, after a vigorous assault by eminent counsel upon the doctrine of Quain's Appeal, it was reasserted in the most positive terms. . . . . .

"It only remains to be determined whether the principle of Quain's Appeal is to be extended to cases of covenants in instruments other than ground-rent deeds. There is a well-established principle that the representatives of a deceased contractor or covenantor are not liable for breaches of a promise which was so entirely personal to himself that it could not have been contemplated that any one else could or should perform it, as a contract to paint a picture or write a book, or to do some act where the skill of the contractor was an element in the making of the contract. Performance of such contracts becomes impossible when the party to fulfil them dies, and in such cases the personal representatives are not bound. Dickinson *v.* Calahan, 7 Harris, 227; Bland's Adm. *v.* Umstead, 11 Harris, 316. But where the contract or covenant is for the payment of money, a different case is presented. As was said by THOMPSON, J., in White's Ex'r. *v.* The Commonwealth, 3 Wright, 176, ' A contract to pay money, although it falls due after the decease of the obligor, does survive. And what is the difference between an agreement to pay at a future period or on a future contingency? The contract is to be completed, not by any personal performance, but by the payment of money. This act an executor can do as effectually as the testator, and it cannot therefore come within the rule of the cases cited.'

"The point in the case now under consideration which makes it more closely resemble Quain's Appeal, is the circumstance that the covenant here may be a perpetual one. It is to pay the interest until the mortgaged lots are so built on as to secure the mortgages. And as the lots are not yet built on, and may never be, it follows that the covenant may endure forever, and the liability to pay may in this respect resemble a yearly ground-rent payable semi-annually. But there is this difference between a covenant to pay ground-rent and the covenant in question here, that the personal covenant to pay the rent is only a collateral security, the ground-rent being a real incumbrance, and the land being the main reliance of the landlord out of which to get his rent, so that, as C. J. GIBSON observed in Torr's Estate, 2 Rawle, 252: ' It is impossible to put a case in which the land is more obviously or more con-

clusively the principal debtor.' The covenant now under consideration was evidently made for precisely the opposite reason —namely, that the mortgagees were unwilling to look to the land exclusively for the interest upon their money until it had been built upon, and thus not only increased in value but in a situation to produce income out of which the interest might be paid.

"The land was a vacant lot, the whole consideration was secured by the mortgages, and the claimants evidently considered Mr. Kite's bond as affording them little or no protection, so that although the mortgages were security for interest as well as principal, yet it cannot be said that the claimants mainly relied upon them for the payment of the interest which was claimed here.

"While the case is not free from difficulty, the auditor has come to the conclusion that Quain's Appeal can not be considered as an authority to rule it, and this objection also is not sustained.

"3. The third objection of the executors must be sustained. It is a well-settled and familiar principle of equity that a creditor who has a lien on two funds, shall not take satisfaction in a way to disappoint another who has a lien on but one. The mortgages of the claimants are security for interest as well as principal, and under the ruling in Gould's Estate, 6 W. N. C., 562, the claimants should first exhaust the security which they have to themselves, by bringing suit upon their mortgages, before they can claim upon the general fund, which is the only resource of the general unsecured creditors."

.Exceptions were filed to this report, and the conclusions of the auditor as to the first two points were sustained by the court. The exceptions on the third point, however, were sustained. The court filed the following opinion:

"The auditor has very clearly shown that the principle of Quain's Appeal (10 Harris, 510), which restricts liability for ground-rent falling due after the death of the covenantor, to the land out of which it issues, cannot be extended to a mere personal covenant not running with the land, for the payment of money. If the law were as contended by counsel for the accountant, every contract for the payment of money not falling due within a year from the death of the contractor, would, as a logical consequence, be of no validity. The case of White's Executors *v.* Commonwealth (3 Wright, 171), cited by the auditor, and the provision in the act of February 24th, 1834 (Purd. Dig., 422, § 24), continuing the lien of debts not maturing within five years after the death of the debtor, fully sustain his views upon this subject and the exceptions to the

proof of the debts of Edwin W. Lehman, executor, and Emily
Lehman, are overruled.

"It was error, therefore to exclude these creditors from the
distribution. The principle which permits a creditor having a
lien upon one fund to compel a creditor having a lien upon
two to proceed in the first instance against that which he
alone can resort to, does not apply where, as here, the two
funds do not belong to the common debtor. (Conser's Appeal,
11 W. N. C., 220.)

"But under any circumstances, it cannot be right to apply
the principle so as to deprive the creditor having the right to
two funds of any participation whatever in one of them. The
mere statement of this proposition is sufficient to show the
error which the auditor has fallen into in this respect. (See
Mason's Appeal, 8 Norris, 402). Gould's Estate (6 W. N. C.,
562), which he has cited, is not to the point. It is not the
case simply of creditors, nor was there any exclusion from
the fund; distribution was simply *suspended* for four months,
with directions to the creditor (which were complied with) to
proceed in the meanwhile against the mortgaged premises."

The executor thereupon took this appeal, assigning for error:

1. The court below erred in not holding that the claim of
Edwin W. Lehman et al., trustees, and of Emily Lehman
should be confined to the land on which the mortgages were
liens.

2. The court below erred in allowing said claim to be paid
out of the funds of the estate generally.

3. The court below erred in not deciding that after the death
of John H. Jones no claim for interest on the mortgages could
be paid out of any fund or property except the land mortgaged.

## Appeal of Edwin W. Lehman, Trustee, &c., July Term, 1883, No. 120.

## Appeal of Emily Lehman, July Term, 1883, No. 121.

## Appeals of Benaiah S. Hunt, Executor, &c., July Term, 1883, Nos. 213 and 214.

After filing their account of the decedent's personal estate,
the executors made sale of certain real estate to pay debts,
and paid the proceeds into court for distribution. The auditor
found that on December 1st, 1876, suit was begun by Lehman
et al., trustees, etc., against Hunt et al., executors, and service
of the writ was accepted. No further proceedings were had in
the suit until January 10th, 1883, when a narr. and bill of
particulars were filed. The narr. set out the above-mentioned
covenant of the decedent, and that the plaintiff had accepted
the mortgages upon the faith of said covenant; the death of

John H. Jones, and the appointment of the defendants as his executors; the usual allegation of performance by the plaintiffs of their covenants, and the usual general averment of breach. On January 25th, 1883, the defendants pleaded "covenants performed *absque hoc*, with leave," etc. On January 4th, 1883, another suit was begun, service accepted, and a narr. and pleas in all respects similar to those in the first case were filed. Similar suits were instituted by Emily Lehman, and were, *mutatis mutandis*, the same as above. All of these suits were, inter alia, for interest accruing subsequently to decedent's death. The claim was made that "the bringing of the suit within five years continued the lien of the indebtedness due, and to become due upon the covenants, upon the real estate of the decedent indefinitely, or at any rate, until a presumption of payment would arise from lapse of time."

The auditor reported upon this question as follows:

"The second suit brought by Mr. Carty, having been commenced more than five years after the death of John H. Jones, deceased, is without any effect whatever upon the lien, and that if, as claimed by Mr. Carty, the lien of the indebtedness created by this covenant is to be continued against the real estate of the decedent for a longer period than five years from his death, it must be by means of the effect of the first action, which was commenced on the 1st of December, 1876.

"The auditor is of opinion that the first suit brought by Mr. Carty continued the lien against the real estate of the decedent of the debt which was then sued for. Inasmuch as the only debt due by the estate of the decedent to the plaintiffs was the amount due under this covenant, and it was known to the executors and their counsel that the suit was brought for the interest which had become due under this covenant, the real estate of the decedent is bound for all that is then sued for. But nothing could have been sued for at that time but the instalments of interest upon those mortgages which had accrued before the date of the suit, and remained unpaid. The bill of particulars shows that there was due at that time interest upon these mortgages, as follows:

| | | | | |
|---|---|---|---|---|
| 1875. July 1. Six months' interest, .............. | $341 25 |
| 1876. Jan. 1. " " " ............... | 341 25 |
| 1876. July 1. " " " ............... | 341 25 |

Total, ............................... $1,023 75

"As to the instalments of interest upon the mortgages which have become due since the suit was brought, the auditor finds nothing upon the record to continue their lien.

"The Act of Assembly of 1834, § 24, Purdon's Dig., 422, pl. 88, provides two ways in which the lien of debts of a decedent can be continued upon his real estate for a longer period than five years after his death. First, by the commencement and prosecution of an action against his heirs, executors, or administrators, within the period of five years from his death; and second, where the debt is not payable within five years, a copy or particular written statement of the bond, covenant, debt, or demand, shall be filed within the period of five years in the office of the prothonotary of the county where the real estate to be charged is situated.

"It seems, then, that under this statute the creditor of a decedent, if his debt is due and payable, is bound to commence his action within five years or lose his lien; and for such debts as are not due and payable, the creditor is bound to file a copy or particular written statement of the instrument of writing by which the debt is secured within the period of five years. So far as the debt was due at the time the suit was brought, in the opinion of the auditor, this suit continued the lien, but it was the duty of the claimants to file a copy or statement of the covenant within the five years, if they desired to continue their lien upon the decedent's land for the interest not yet accrued. No such statement has been filed. The fund in court is the proceeds of real estate sold nearly eight years after the decedent's death. The auditor is, therefore, of opinion that the claimants have no lien upon the fund except for the debt for which suit was brought. This claim is, therefore, allowed to the extent of $1,023.75, and the balance of the claim is disallowed."

Exceptions were filed to this report and dismissed by the court. (No opinion filed.) Both parties then took these several appeals, and the claimants, Lehman et al., assigned for error, in brief:

1. The decision that the second suit had no effect in keeping alive their lien.

2. The decision that their first suit only continued the lien of interest *then due*.

3. The decision that to continue their lien for interest to accrue in the future the claimants should have filed a copy or statement of their covenant.

4. The court erred in not deciding that, in view of the default of the decedent, and his executors, after his decease, in not fulfilling the covenant by improving the lots, and that the action commenced in 1876 was a full knowledge, notice and demand to the executors of the nature and character of the continuing claim, and that such action having been brought within five years after the decedent's death, it con-

tinued the lien of the covenant for ten years, and that, therefore, claimant is entitled to an allowance for all interest accruing under the covenant within the period of ten years after his decease.

And the accountant assigned for error:

" 1. The court below erred in not holding that the claims of Emily Lehman and of Edwin W. Lehman and John L. Buzby, executors and trustees under the will of William Crean, deceased, should be confined to the lands on which the mortgages held by them were liens.

" 2. The court below erred in holding that the bringing of the suits in the Court of Common Pleas, No. 1, to December Term, 1876, Nos. 421 and 422, continued the lien of the debts.

" 3. The court below erred in allowing any part of the said claims."

*Edward Olmsted* (with whom was *Henry C. Olmsted*) for Benaiah S. Hunt, the accountant.—A covenant in a ground rent deed does not survive against executors and administrators except as to the rents which accrued in the lifetime of the decedent. Quain's Appeal, 10 Harris, 510; Gardiner *v.* Painter, 3 Phila., 365; Williams' Appeal, 11 Wright, 283. The same rule applies to other contracts which, from their nature, endure perpetually; such as an agreement to maintain a partition fence. Bland's Administrators *v.* Umstead, 11 Harris, 316. An agreement to sell all the lumber to be sawed during five years was held not to bind the representatives of the parties who died before the expiration of that time. Dickinson *v.* Calahan's Administrators, 7 Har., 227. An equitable conversion of real estate into personalty is only produced by an imperative direction to sell. Lindley's Appeal, 13 W. N. C., 65; Jones *v.* Caldwell, 1 Out., 42; Peterson's Appeal, 7 Norris, 397; Anewalt's Appeal, 6 Wright, 414. The plain requirements of the Act of 1834 were not complied with by the claimants in order to continue the lien of their debts, and this omission is not supplied by the fact that the executors or their counsel had knowledge of the claim. A devise for the payment of debts creates no special testamentary lien. Steel *v.* Henry, 9 Watts, 523; Alexander *v.* McMurry, 8 Watts, 504; Agnew *v.* Fetterman, 4 Barr, 56; Trinity Church *v.* Watson, 14 Wright, 518; Wallace's Appeal, 5 Barr, 103.

*Jerome Carty* for Lehman et al., claimants.—The covenant of decedent was not a mere personal covenant dependent upon his manual or mental labor. The improvement of the lots could be as well carried out by his executors as by himself.

The covenant, moreover, comes under the rule of Campbell *v.* Baker, 10 Wright, 243; and Roberts *v.* Riddle, 29 Smith, 468; and the claimants were not bound to sue the principal or show his insolvency, because the contract was one of surety-ship, dependent upon the condition precedent that the lots should be improved. The intention of the legislature was to provide a limitation against the existence of a lien on unre-corded debts binding the lands of a decedent, in the posses-sion of the widow and heirs and bona fide purchases, after the period of five years, unless a demand should be made, an action commenced, or a written statement of any bond or covenant not falling• due within five years after the death of the decedent; and it has been decided that if suit is com-menced the lien is good for ten years. See Hope *v.* Marshall, 96 Pa. S. R., 395. As between the creditor and the executors, administrators and distributees, the Acts should be construed liberally in favor of the creditor, for the reason that in Penn-sylvania real estate being assets for the payments of debts, any proceeding by suit with the knowledge and consent of the legal representatives of the debtor falls within the spirit and intention of the Acts which brings notice of the claim to the estate within five years, and should be decided in favor of the creditor in case of any ambiguity in the Acts. The testator's will worked an absolute equitable conversion of his real estate into personalty for the payment of his debts. Anewalt's Appeal, 6 Wright, 414; Horner's Appeal, 6 P. F. Smith, 405; Evans' Appeal, 13 P. F. Smith, 183; Steel *v.* Henry, 9 Watts, 523; Roland *v.* Miller, 11 W. N. C., 431.

Mr. Justice PAXSON delivered the opinion of the Court, February 4, 1884.

These are five appeals from the decree of the court below distributing the estate of John H. Jones, deceased. I will con-sider the questions they present without incumbering the opinion by references to the particular appeals in which such questions are respectively raised.

Among the claims presented before the auditor was one by Edwin W. Lehman and John L. Busby, executors and trus-tees of the will of William Crean, deceased, for $5,460; and one by Emily Lehman for $3,820. Both claims rest upon the same principle and need not be separately discussed. The claim first named arose under the following circumstances: On the 22d of January, 1874, the decedent, John H. Jones, entered into a written agreement with the claimants whereby he covenanted and agreed to be responsible for and guarantee the payment of the interest upon each of ten several inden-tures of mortgage, given and executed by William S. Kite to

the claimants, " as the same shall accrue unto the said Edwin W. Lehman and John L. Busby, executors and trustees as aforesaid, until such time as the lots described in said mortgages shall be improved to fully secure the mortgage debts thereon secured." This agreement was signed and sealed by the decedent. The lots of ground described in the agreement have not been improved up to the present time. It was found by the auditor that the interest on these mortgages remaining unpaid up to the first of January, 1883, amounted to $5,460. The two principal questions which are involved in this claim may be stated as follows : 1st. Does the decedent's covenant to pay the interest on the mortgages bind his executors and administrators, and 2d, If the covenant does extend to the executors and administrators, was the lien thereof continued as to the real estate of the decedent?

As to the first point it was strongly urged by the learned counsel representing some of the appellants that the covenant did not extend to the executors and administrators of the covenantor, and Quain's Appeal, 10 Harris, 510, was cited in support of this view. Quain's Appeal was the first Pennsylvania case which squarely decided that a ground rent covenant does not survive against executors or administrators except as to the rents which accrued in the lifetime of the decedent; and that rents which accrue subsequent to the death of the covenantor are not payable out of his personal estate, and it is not too much to say that that decision was somewhat of a surprise to the profession. For it must be conceded that such covenants are personal and may be enforced against the covenantor during his life, even after he has parted with the ground out of which the rent issues. The court was doubtless driven to that decision by the practical impossibility of enforcing such a covenant, in many instances perpetual, against a dead man's estate, and no one at the present day who will take the trouble to read the opinion of the court as delivered by Justice LOWRIE, can doubt its soundness. Quain's Appeal was followed by a decision of the District Court of Philadelphia, in which, in an opinion delivered by the late Judge STROUD, it was held that while the administrator of a grantee in a ground rent deed is a proper party to an action of covenant for the rent accrued after his death, the judgment will however be restricted to the land out of which the rent issues. See Gardiner *v.* Painter, 3 Phila. Rep., 365. This case was not brought up to this court for review, but in Williams' Appeal, 11 Wright, 283, it is referred to by the late Chief Justice THOMPSON with approval, and the doctrine thereof, as well as of Quain's Appeal, affirmed by this court. We may therefore regard the question at rest.

But we are not prepared to apply the same doctrine to the case in hand for obvious reasons. While there are some points of analogy between a ground rent and the covenant in question, there are also essential points of difference. In the former instance the rent issues out of the land, and the covenantee must be presumed, especially in the case of perpetual rents, to rely upon the security of the land for payment. In the creation of such ground rents, as was said by this court in Quain's Appeal, supra: " The grantor of the land cannot be presumed to have then placed any value on such a covenant; for the personal covenant of the original grantee is as nothing in a series of tenants lasting forever. The real security is the covenant running with the land and encumbering it; and this is the essential reliance of the owner of the rent." It is not so with the covenant we are considering. The land in its unimproved condition was not deemed a sufficient security, and the mortgagee declined to take the mortgages without security that the interest should be paid until such time as by improvements placed upon the property his mortgages should be made safe. So that we must assume that the mortgagee looked to the personal security of the covenant, and to that alone, for the interest.

Nor is it a perpetual covenant. It may be regarded as a security for the improvement of the property. This is really its scope, and the decedent could have relieved himself and his estate by doing this or procuring it to be done by others. The decision in Quain's Appeal was a necessity growing out of the peculiar facts of that case, and we are not disposed to apply it to cases in which no such necessity exists. Were we to do so in the present instance, we would be at a loss where to draw the line. The general rule is that all personal covenants survive to the executor or administrator of the covenantor, and to take a case out of the rule there must be something more than the mere fact that the covenant is to be performed *in future*. We are clearly of opinion that the executors of this testator are bound by his covenant to pay the interest on the mortgages in question.

This brings us to the second branch of the inquiry, which relates to the extent the real estate of the testator is bound by the covenant.

The Act of 24th of Feb., 1834, section 24 (P. L. 77) provides two ways in which the debts of a decedent can be continued upon his real estate for a longer period than five years after his death. They are :

First.—By the commencement and prosecution of an action against his heirs, executors or administrators within the period of five years from his death, and

Second.—Where the debt is not payable within five years, a copy or particular written statement of the bond, covenant, debt, or demand shall be filed within the period of five years in the office of the prothonotary of the county where the real estate to be charged is situate. Under this statute it is plain that where the debt is due and payable the suit therefor must be commenced within five years from the death of the decedent, or the lien is lost; and where the debt is not due and payable within five years the creditor is bound to file a copy or particular written statement of the instrument of writing by which the debt is secured, within five years. These directions being statutory cannot be omitted.

Two suits were commenced in the Courts of Common Pleas against the executors of John H. Jones, deceased, to recover arrears of interest due under this covenant. The first writ was issued on Dec. 1, 1876; the second on Jan. 4, 1883, and in both cases a narr. and bill of particulars were filed, but in neither was a copy of the covenant or instrument of writing filed, as required by the Act of 1834 when it is sought to hold the lien for a debt not maturing within five years. The auditor and the court below held that to the extent that the arrears of interest were embraced in the first suit, which was brought within five years of the testator's death, the said suit continued the lien thereof as to said arrears, and awarded the claimant a dividend out of the fund in court. But as to the second suit, inasmuch as said fund is the proceeds of real estate sold over eight years after the testator's death, and no copy of the instrument had been filed in the proper office, it was held that the lien was gone and no further arrears could be recovered. It is difficult to see how any other conclusion could have been reached. The mere bringing of the second suit without a compliance with the Act of 1834 in filing a copy of the instrument could not prolong the lien beyond five years. This is too plain for argument.

It was urged, however, on behalf of some of the appellants, that the will of the testator worked a conversion of the real estate. The learned auditor has found that the fund in court is the proceeds of real estate, and has distributed it as such. If this contention be correct, the fund must be regarded as personalty, and as such distributed.

We are unable to see anything in the will of the testator from which an intent to convert can fairly be drawn. After giving a number of legacies to different persons and institutions, he devises and bequeaths all the residue of his estate to trustees in trust, "to let and demise the real estate, and invest and keep invested the personal estate" for the purposes of the trust, and then follows a power of sale in these words: "To

sell all or any part of the real estate, without liability on the part of the purchaser to see to the application of the purchase money, and the proceeds of sale to re-invest from time to time, if practicable, in irredeemable ground rents upon the same trusts."

There is no direction here to sell; only a power. It ought to be settled by this time that, in order to work a conversion, there must be either—1st. A positive direction to sell; or 2d. An absolute necessity to sell in order to execute the will; or 3d. Such a blending of real and personal estate by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money.

In each of the two latter cases an intent to convert will be implied.

These propositions are settled by a line of authority. It is sufficient to refer to the late cases of Jones *v.* Caldwell, 1 Out., 42; Roland *v.* Miller, 4 Out., 47; Lindley's Appeal, 6 Out., 235.

We have neither of these requirements in the will of this testator. The most that can be said is that he made a mistake as to the extent of his estate, and a sale of his real estate became necessary in order to pay his debts. But this is not to the purpose. The scheme of his will did not contemplate this, and if by reason of the depreciation of his property or for other cause a necessity to sell the real estate arose which was not foreseen by the testator, it will not work a conversion, for the obvious reason that a conversion is always a question of intent.

We are of opinion that all of the questions arising in this estate were correctly disposed of by the court below.

The decree is affirmed and the appeals dismissed at the costs of the respective appellants.