## Cooper's Estate.

*Will—Conversion—Power to sell.*

In order to work a conversion of a testator's land into money from the time of his death, there must be either, " 1st. A positive direction to sell; or, 2nd. An absolute necessity to sell in order to execute the will; or, 3d. Such a blending of real and personal estate by the testator in his will, as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money."

Testator directed as follows : " I direct that my farm be leased if the same can be done to advantage, otherwise I direct that my executor shall

sell the same at public or private sale, at such time as he shall deem it expedient so to do, and I hereby authorize and empower him to make good and sufficient deed for conveying the same to the purchaser." This clause was followed by gift to his wife of half of the income or proceeds of sale of the estate when sold, with the residue to certain persons named. *Held*, that there was no such positive direction or absolute necessity to sell as to work a conversion from the death of testator.

Where no conversion of land takes place under a will until by sale at the expiration of more than two years from date of testator's death, the proceeds of the sale are discharged from all liability for the payment of decedent's debts. When the debts ceased to be a lien upon the land upon the expiration of the two years, they ceased also to be payable out of the proceeds of the sale of the land.

Argued May 25, 1903. Appeal, No. 270, Jan. T., 1902, by Annie Cooper, from decree of O. C. Perry Co., dismissing exceptions to auditor's report in es te of Josiah K. Cooper. Before MITCHELL, DEAN, FELL, BROWN and POTTER, JJ. Reversed.

Exceptions to report of Luke Baker, Esq., auditor.

From the record it appeared that the testator died on July 26, 1898, leaving to survive him a widow but no children. The evidence showed that the testator in his lifetime gave various notes to nephews and nieces. The will is quoted in the opinion of the Supreme Court. The executor after leasing the farm sold it on September 21, 1900, for $5,100. The whole of the personal estate was applied to the payment of debts other than the notes given to nephews and nieces. It appeared that these notes were given without consideration. The auditor sustained by the court applied a portion of the proceeds of the sale to the payment of the notes, thus postponing the widow.

*Errors assigned* were in dismissing exceptions to auditor's report.

*B. F. Junkin*, with him *Grafton Junkin*, for appellant.—There was no conversion from the death: York's App., 110 Pa. 69; Howard's App., 2 Pennypacker, 347.

*W. N. Seibert*, of *Seibert & Seibert*, and *Charles H. Smiley*, for appellees.—There was such a blending of the real and personal estate by the testator in his will as to clearly show that he in-

tended to create a fund out of both real and personal estate. and to bequeath the fund as money: Dundas's App., 64 Pa, 325; Page's Est., 75 Pa. 87; Roland v. Miller, 100 Pa. 47; Hunt's and Lehman's Apps., 105 Pa. 128; Marshall's Est., 147 Pa. 77; Klotz's Est., 190 Pa. 152; Mustin's Est., 194 Pa. 437; Keim's Est., 201 Pa. 609; Rauch's Est., 21 Pa. Superior Ct., 60.

OPINION BY MR. JUSTICE BROWN, July 9, 1903:

Josiah K. Cooper, the testator, died July 26, 1898, and the controlling question raised on this appeal is whether, by the terms of his will, there was a conversion of his real estate from his death, or from September 21, 1900, the time it was sold by his executor. The clauses in the will from which it must be determined when the conversion took place are: "Third. I direct that my farm be leased if the same can be done to advantage, otherwise I direct that my executor shall sell the same at public or private sale, at such time as he shall deem it expedient so to do, and I hereby authorize and empower him to make good and sufficient deed for conveying the same to the purchaser. Fourth. I give and bequeath to my wife, Annie Cooper, the one half of all proceeds from my estate arising from real or personal effects when the same is sold. She to have the one half of the proceeds of the farm during the term of any lease thereof. This bequest to be in lieu of all dower, right of dower and exemption. Fourth. I give and bequeath all the rest and residue of my estate or the proceeds thereof to Mary J. Linn, of Connelsburg, Mahoning county, Ohio, Geo. A. Cooper, J. D. Cooper, Samuel C. Cooper, Frederick S. Cooper, and Harry Cooper, Elam Cooper, sons of Andrew Cooper, deceased, share and share alike."

Conversion takes place from the death of the testator only when there is a positive direction to sell. If, as was said in Hunt's and Lehman's Appeals, 105 Pa. 128, and subsequently repeated in Irwin et al. v. Patchen et al., 164 Pa. 51, anything ought to be settled by this time, it is that, in order to work a conversion of a testator's land into money from the time of his death, there must be either, "1st. A positive direction to sell; or, 2nd. An absolute necessity to sell in order to execute the will; or, 3rd. Such a blending of real and personal estate by the testator in his will, as to clearly show that

he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money." "The direction to sell must be absolute and unconditional:" Stoner v. Zimmerman, 21 Pa. 394. "To establish a conversion, the will must direct it absolutely, *or out and out,* irrespective of *all* contingencies:" Anewalt's Appeal, 42 Pa. 414; and, "unless there be an imperative direction to sell, irrespective of contingencies and independent of discretion, conversion will not take place until the sale is actually made: Anewalt's Appeal, 6 Wright, 414; Henry v. McCloskey, 9 Watts, 145;" Peterson's Appeal, 88 Pa. 397. "It must not rest in the discretion of the executor, nor depend upon contingencies:" Jones v. Caldwell, 97 Pa. 42. "It must be imperative, not contingent or discretionary merely, or a conversion does not take place until the sale is actually made:" Mellon v. Reed, 123 Pa. 1.

In the case before us there is no positive direction to sell. It is in the alternative. The first and positive direction is that the farm be leased, and no limitation is put upon the time for which it is to be leased. It is to be leased if it can be leased to advantage, that is, so long as it can be leased to advantage, and only "otherwise," that is, when the executor can no longer lease it to advantage, is it to be sold. It might have been leased to advantage during the lifetime of the widow, and she would have received one half of the proceeds during that period; and there is no direction to sell at her death. The sale which the executor was authorized to make depended upon a contingency which might never have happened. The testator may have thought that his farm would have to be sold, but he gave no unconditional direction to sell it, and it might have been leased to advantage indefinitely. As there was no conversion under a positive direction to sell, so there was no absolute necessity to sell in order to execute the will, for the leasing of the farm during the lifetime of the widow and giving her one half of the proceeds during life would have carried out the provisions of the will. Nor does the intention of the testator clearly appear that, from the time of his death, there should be such blending of his real and personal estate as to create a fund out of both to be bequeathed to the legatees as money, for such a blending depended entirely upon whether or not the alternative direction to the

executor to sell should be carried out. There were to be no proceeds from the sale of the farm, unless the same should be sold after it was learned that it could not be leased to advantage. The conversion of the testator's farm took place, therefore, when, in the exercise of the mere discretion reposed in the executor, to be exercised only on a certain condition, it was sold on September 21, 1900,—more than two years after the death of the testator.

As there was no conversion of the farm until September 21, 1900, the notes given to the appellees ceased to be liens upon it on July 26, 1900, when two years had expired from testator's death. It is not necessary for us to consider the purpose for which the appellant alleges these notes were given, for, even if in each instance, they were executed and delivered by the decedent for a valuable consideration, and represented his bona fide indebtedness, they ceased to be liens upon his real estate at the expiration of two years from his death, because the holders had not, as required by the Act of June 8, 1893, P. L. 392, brought suits upon them. If, after July 26, 1900, the testator's land was discharged from all liability for the payment of these notes, the proceeds of a subsequent sale of it were not bound by them; and if, after that date, the holders of the notes could not have looked to the land, how can they turn to the purchase money for payment? The notes may have represented debts of the testator, for which his land was liable at the time of his death, and would have continued so, if the statute had been followed; and his personal estate might have been indefinitely held for their payment, but the proceeds of the sale of his farm, at the time it was sold, formed no part of his estate, real or personal. The land itself had been freed from the obligation of his unsecured debts on July, 26, 1900, and whatever took its place was equally absolved. In Kerper v. Hoch, 1 Watts, 9, and Commonwealth v. Pool, 6 Watts, 32, in passing upon a statute similar in its provision to the act of June 8, 1893, it was held that the limitation annexed to the lien of a debt of the decedent on his lands was not exclusively for the security of purchasers, but that heirs and devisees were equally the objects of the act's protection; and, in reannouncing this rule, there is no reason why it should not include the legatees of the proceeds of land sold after the liens of the debts of the de-

cedent upon it had expired; for if, as owners of the unconverted land, it could not be taken from them, they ought not, in reason, to be deprived of the proceeds of it when converted into money. As to the claims of the appellees upon their respective notes, we repeat what was said in Cake's Estate, 157 Pa. 457 : "The insuperable difficulty, in the way of the rejected claims, is that they had ceased to be liens on the land, from the sale of which the fund in question was raised. Assuming them to have been valid claims against the estate of the intestate and therefore liens on the real estate of which he died seized, they were not liens thereon at the time the sale was ordered, and therefore not entitled to participate in the distribution."

What we have said as to the time when there was a conversion of the real estate of the testator, and as to the immunity of the proceeds of the sale of it from liability for his common debts, disposes of the questions raised by the five assignments of error. In the printed argument there appears a schedule of distribution, which we are asked to approve, but, instead of doing so, we reverse the decree below and remit the record, that the exceptions to the account of J. D. Cooper, executor of the last will and testament of Josiah K. Cooper, deceased, may be disposed of and distribution made in accordance with this opinion, the costs of this appeal to be paid out of the fund in the hands of the accountant.