212     315
215     272

212     315
40SC 550
41SC 282

# Vanuxem's Estate.

*Taxation—Collateral inheritance tax—Decedents' estates—Conversion—*
*Real estate in other states.*

Testator directed as follows: "I give unto my executors hereinafter
named full power and discretion to sell any or all of my real estate whenever
any such sale be necessary or expedient for any purpose of my estate, of ad-
ministration, distribution or otherwise." In the administration of the estate
it became necessary to sell the real estate in order to pay the pecuniary
legatees.  *Held,* that the value of the lands in other states is subject to the
payment of the Pennsylvania collateral inheritance tax.

Mr. Chief Justice MITCHELL dissents.

Argued Jan. 31, 1905.  Appeal, No. 257, Jan. T., 1904, by
William Potter et al., executors, from decree of O. C. Mont-
gomery Co., April T., 1904, No. 7, confirming the report of
the collateral appraisement in estate of Louis C. Vanuxem,
deceased.  Before MITCHELL, C. J., DEAN, FELL, POTTER and
ELKIN, JJ.  Affirmed.

Appeal from appraisement of collateral inheritance tax.

SOLLY, P. J., filed the following opinion:

Louis C. Vanuxem, a resident of the township of Spring-
field, this county, died therein on December 21, 1903, unmar-
ried and testate, leaving no lineal descendants.  His will is
dated October 16, 1902, and has several codicils attached.  In
the third item he gives general pecuniary legacies to the amount
of $570,500, without deduction for taxes or like charges (which
are to be paid out of the general estate), to his sisters, nieces
and other relatives and persons, payments to be made to them
in the order named.

In the fourth item the testator gives to his sisters, Mary and
Florence, during their lives and the life of the survivor, the
full and free use and occupancy as a home for themselves and
any of his sisters who may become widowed, his dwelling on
Evergreen avenue, Chestnut hill, and his plantation at Upatoi,
Georgia, together with all household goods, furniture, horses,
carriages, etc., at either place, on condition that they maintain
the houses in good order, pay taxes and like charges, with the

right to rent the premises for their benefit, should they not desire to occupy either. Upon the death of the survivor, the executors are directed to sell the properties, the proceeds of which shall pass into the residuary estate, which is devised and bequeathed in item five to and among certain persons and corporations, share and share alike, with the provision that in the event of the death of either of two of his brothers-in-law, in the lifetime of the testator, leaving his wife surviving, she shall be substituted as residuary legatee in place of her husband, and should both husband and wife predecease him, leaving issue surviving, such issue shall take the share of their father or mother.

By the third codicil, which is dated June 9, 1903, a pecuniary legacy of $50,000 is bequeathed to Louis Vanuxem Cochran, a nephew. The residuary clause of the will is amended and radically changed. In lieu of the devise and bequest of equal shares of the residue of the estate to the persons named in that clause, there are general pecuniary legacies of $10,000 each bequeathed to John Scott, Jr., James B. Walter and Gustav H. Seelaus, and $25,000 each to the trustees of Princeton University and the trustees of Jefferson Medical College. The interests of his sisters, Mary and Florence Vanuxem, and his brothers-in-law, William Potter, John Lewis Cochran and Daniel L. Hebard, are to remain as devised and bequeathed in the residuary clause. They are, therefore, the residuary devisees and legatees of the estate.

The language of the seventh item of the will, in part, is as follows : " I give unto my executors hereinafter named full power and discretion to sell any or all of my real estate whenever any such sale be necessary or expedient for any purpose of my estate, of administration, distribution or otherwise."

At the time of his death the testator was possessed of personality, consisting of bonds, stocks, mortgages, notes, insurance policies, cash, etc., all of the value of about $460,000, as fixed by the appraiser of the collateral inheritance tax. His debts amounted in round figures to $140,000. The general pecuniary legacies bequeathed in the will and codicils foot up about $700,000.

He was seized in fee simple of certain real estate in Pennsylvania, Georgia, Tennessee and Illinois, a detailed statement

of which, as well as the personal assets, with values, appear in the inventory and appraisement made up and filed by the collateral appraiser. Upon the real estate situated in the city of Knoxville he assessed the tax due at $1,350.13, and upon that in the city of Chicago at $6,741.82. He assessed no tax on the real estate at Upatoi, Georgia, because in his opinion it is not liable.

His action is based upon the conclusion that there is an equitable conversion of the real estate because there is not only an absolute necessity to sell the same to execute the will, but also such a blending of the real and personal estate by the testator as to show his intention to bequeath the fund arising out of the same as money. He cites a number of authorities to support the assessment of the tax on the Tennessee and Illinois lands. The executors and legatees have taken this appeal from the assessment of these lands. Their contention is that these lands pass as real estate to the legatees, there being no equitable conversion under the will.

The Act of May 6, 1887, P. L. 79, provides that all estates, real, personal and mixed of every kind whatsoever, situated within this state, whether the person or persons dying seized thereof be domiciled within or out of this state, and all such estates situated in another state, territory or country, when the person or persons dying seized thereof shall have their domicil within this commonwealth, which passes to collaterals, shall be subject to the payment of collateral inheritance tax. The tax imposed is not a succession duty on the recipient of the property, but is a tax upon the property itself as appears from the second proviso in the third section, that it shall remain a lien on the real estate on which the same is chargeable until paid. When the legislature undertook to impose such tax upon real estate situate in another state, it transcended the power of the state : Bittinger's Estate, 129 Pa. 338 ; Drayton's Appeal, 61 Pa. 172 ; Commonwealth v. Coleman's Administrator, 52 Pa. 468. The border line, however, is reached when property which is in fact real estate is to be treated as personalty under the doctrine of equitable conversion : Handley's Estate, 181 Pa. 339.

Is there an equitable conversion of the lands situated in Knoxville and Chicago ? If there is not, then they are not

subject to the tax for the "state cannot exercise extraterritorial taxing power." If there is a conversion, then they are liable and the action of the appraiser must be sustained.

Conversion is always a question of intent. The intent of a testator is to be gathered from his entire will, rather than from the terms of a particular devise, which regarded alone might be inconsistent with the testamentary scheme as a whole: Dean v. Winton, 150 Pa. 227.

In Hunt's and Lehman's Appeals, 105 Pa. 128, Mr. Justice PAXSON said: "It ought to be settled by this time that in order to work a conversion, there must be either: 1st, a positive direction to sell; or, 2d, an absolute necessity to sell in order to execute the will; or, 3d, such a blending of real and personal estate by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate and to bequeath the said fund as money. In each of the two latter cases an intent to convert will be implied." This case has been cited and the language of Justice PAXSON quoted approvingly again and again by the appellate courts. Among instances are Irwin v. Patchen, 164 Pa. 51; Sauerbier's Estate, 202 Pa. 187; Rauch's Estate, 21 Pa. Superior Ct. 60.

Mr. Justice MITCHELL, in the late case of Yerkes v. Yerkes, 200 Pa. 419, says: "The doctrine of equitable conversion is based on the rule that what is to be, or ought to be done, shall be treated as if done already. It is a fiction, therefore, invented to sustain and carry out the intention of the testator or settler, never to defeat it. Its application requires constant watchfulness to guard against the tendency to become a formal rule de jure without regard to its real purpose and necessity. It should never be overlooked that there is no real conversion; the property remains all the time in fact, realty or personalty, as it was; but for the purpose of the will it may be necessary, and only so far it is treated in contemplation of law as if it had been converted. Few testators have any knowledge of the doctrine, or any actual intent to change the nature of their property, except when and to the extent that may be required to carry out the special purpose of the will. The presumption, therefore, no matter what the form of words used, is always against conversion, and even where it is

required, it must be kept within the limit of actual necessity."

But conversion will take place, though the language confers a more discretionary power of sale, where it is not possible to execute certain provisions of the will without a sale of the real and personal property into money. "If a testator authorizes his executors to sell his real estate and to execute and deliver to the purchasers deeds in fee simple, and it is clear from the face of his will that it was his intention that the power so conferred by him should be exercised, it will be construed as a direction to sell and operate as an equitable conversion. If in addition to this clear intention of the testator, it plainly appears that effect cannot be given to material provisions of the will without the exercise of this power, the conclusion is irresistible that a conversion is as effectually accomplished by the will, and the duties of the executors under it are the same, as if it contained a positive direction to sell:" Fahnestock v. Fahnestock, 152 Pa. 56.

With these authoritative explanations of the doctrine of equitable conversion as applied in Pennsylvania, we turn to the will of the testator to ascertain his intent, and his scheme of distribution. In brief he gives general pecuniary legacies upwards of $700,000; devises certain of his real estate to two of his sisters for life, and at their death directs a sale by the executors; and devises and bequeaths the residue of his estate to his two sisters and three brothers-in-law. Whenever it is necessary or expedient for any purpose of the estate, of administration, distribution or otherwise, the executors are given full power and discretion to sell any or all the real estate. The pecuniary legacies are to be paid before those to whom the residuary is given shall receive anything, because it is only what remains of the estate, after the specific legacies are paid, that passes as residue or remainder. These legacies pass to the legatees as money. The testator intended them to be paid in cash. There is nothing in the language of the will to show they are to be paid in any other way. Their character is personalty. He must have foreseen the necessity for a sale of his real estate to carry out his scheme of dividing his estate by first bestowing gifts upon the beneficiaries, in the form of pecuniary legacies, else how were they to be paid?

He, therefore, gives his executors full power to sell the real estate whenever a sale is necessary for any purpose of the estate, of administration, distribution or otherwise. It is true the power is discretionary, not direct and positive, but the intent is manifest that it is to be exercised, if the purposes of distribution require it. The power is, therefore, to be construed as a direction to sell.

The last codicil to the will was executed June 9, 1903, less than seven months before testator's death. It will be observed he bequeaths $80,000 in pecuniary legacies to certain legatees who were included in the residuary clause of the will, thus giving them preference over the remaining residuary legatees. This amount, together with the legacies given in the will, made money gifts aggregating nearly $700,000, or several hundred thousand dollars more than his personal estate was then worth. The testator is presumed to have known the value of his personal estate at that time. He undoubtedly knew the extent of his gifts, and it would be passing strange if he intended their payment to be confined to the proceeds of the personal estate, resulting in each legatee receiving much less than the amount of the gift. The manifest intention of the testator is to first give legacies of different amounts, and what is left of the estate to five residuary legatees. The latter take what remains of the estate after the legacies have been first paid and satisfied thereout. "A residuary clause in a will is a gift of all that is left after the gifts specified or designated have been paid and satisfied:" Per PENROSE, J., in Wood's Estate, 13 Pa. Dist. Rep. 195. It may be said the testator blended his real and personal estate, authorized a sale of the former by the executors, when in their discretion the purpose of distribution required it. But there can be no shadow of doubt that in order to execute the will, carry out the provisions, and pay the general pecuniary legacies, it is absolutely necessary to sell the real estate. Effect cannot be given to the will, without the exercise of the power of sale. For the purpose of administration and distribution, the proceeds of the lands must come into this court. It follows that an equitable conversion is as effectually accomplished by the will and the duties of the executors under it are the same as if it contained a positive direction to sell. In reaching this

conclusion, the injunction of Yerkes v. Yerkes, 200 Pa. 419, to " keep within the limits of actual necessity," is observed.

Although the tax is assessed by the appraiser upon the value of the lands situate in foreign states, it is really upon the proceeds to be brought here for distribution. In strictness it is the legacies themselves that are subject to the tax. General pecuniary legacies pass to the legatees only in the form of money. If real estate should be conveyed to such legatees in satisfaction of their legacies, it would only be a substituted equivalent for the pecuniary sum of the legacies: Miller v. Commonwealth, 111 Pa. 321.

It is immaterial to this inquiry, what the statutes of the states of Illinois and Tennessee are on the subject of collateral inheritance tax on lands within their jurisdiction owned by one dying domiciled in another state. Whether lands of this decedent situated in those states are liable to pay such tax or succession duty cannot affect the question before us. If there is an equitable conversion of the lands into personalty under the will of the decedent, and the proceeds are brought into this court for distribution among collaterals, the legacies payable out of such proceeds are liable for the collateral inheritance.

From what has been said, it follows that the action of the appraiser must be sustained. In our view, there is such an absolute necessity to sell the lands in the states of Illinois and Tennessee and convert them into money, in order to pay general pecuniary legacies, and carry out the intent of the testator and the provisions of his will, as to work an equitable conversion into personalty, the proceeds of which sales must be brought into this court for distribution.

And now, July 21, 1904, appeal dismissed at costs of appellants.

*Error assigned* was the decree of the court.

*N. H. Larzelere*, for appellant.—Where the conversion is not referable to the exact instant of testator's death, and where it may only take place provided the executors chose to exercise the power of sale, no legal conversion takes place which will bring the estate within the taxing power of the commonwealth : Hale's Est., 161 Pa. 181 ; Drayton's App., 61 Pa. 172 ; Hand-

322    VANUXEM'S ESTATE.

ley's Est., 181 Pa. 339 ; Yerkes v. Yerkes, 200 Pa. 419 ; Neely
v. Grantham, 58 Pa. 433.

- The power to tax property in another jurisdiction is of
doubtful right, and is restricted to the one case alone where
land situated in a foreign jurisdiction is to be considered per-
sonal estate in this.

*J. A. Strassburger*, for appellees.—The will worked a conver-
sion : Hunt's and Lehman's Apps., 105 Pa. 128 ; Fahnestock
v. Fahnestock, 152 Pa. 56 ; Yerkes v. Yerkes, 200 Pa. 419 ;
Sauerbier's Est., 202 Pa. 187 ; Miller v. Com., 111 Pa. 321.

Williamson's Est., 153 Pa. 508, squarely rules that the pro-
ceeds of real estate of a testator situate in a foreign state which
he has converted and the proceeds are payable to collaterals
are subject to collateral inheritance tax : Miller's Est., 182 Pa.
157 ; Coleman's Est., 159 Pa. 231 ; Lewis's Est., 203 Pa. 211.

OPINION BY MR. JUSTICE POTTER, June 22, 1905 :

Louis C. Vanuxem, Esq., of Springfield township, Mont-
gomery county, made his last will and testament dated Octo-
ber 16, 1903.  By item seven of his will he gives his execu-
tors full power and discretion to sell any or all of his real
estate, whenever any such sale be necessary or expedient for
any purpose of his estate, of administration, distribution or
otherwise.  He was seized of certain real estate in Tennessee
and Illinois, and upon this property, the appraiser of collat-
eral inheritance tax, assessed taxes.  This was done upon the
ground that the directions in the will worked an equitable con-
version of the lands into personal property, by authorizing the
executors in their discretion to sell for distribution, and the
further fact that it became necessary to sell in order to pay
the pecuniary legatees.

The orphans' court sustained the action of the appraiser.
It was not pretended that the real estate in other states could
be charged with collateral inheritance tax as real estate, but
only by reason of the fact that it was necessary for the execu-
tors to sell it, in order to provide the money to pay the pecu-
niary legacies.  And that being the case, the power to sell if
necessary to make distribution, became under the manifest in-
tent of the testator, a direction to sell.

The judge of the orphans' court thus reasons it out in his opinion : " The pecuniary legacies are to be paid before those to whom the residuary is given shall receive anything, because it is only what remains of the estate, after the specific legacies are paid, that passes as residue or remainder. These legacies pass to the legatees as money. The testator intended them to be paid in cash. There is nothing in the language of the will to show they are to be paid in any other way. Their character is personalty. He must have foreseen the necessity for the sale of his real estate to carry out his scheme of dividing his estate by first bestowing gifts upon the beneficiaries in the form of pecuniary legacies, else how were they to be paid ? "

The pecuniary legacies aggregated nearly $700,000, or very much more than the amount of the personal estate, so that we cannot see any way by which the executors can escape converting the land into money, in order to carry out the provisions of the will. We agree with the conclusion of the court below, that " an equitable conversion is as effectually accomplished by the will, and the duties of the executors under it are the same as if it contained a positive direction to sell." It follows as a matter of course that if sold, the proceeds of these lands must come into the courts of Pennsylvania for distribution. The tax, therefore, falls upon the legacies themselves, rather than upon the lands which are now appraised in order to determine the amount of the tax.

The opinion of the court below has met so clearly the questions involved in this appeal and has disposed of them so fully, that further elaboration, upon our part, is both difficult and unnecessary.

The assignments of error are overruled and the decree of the orphans' court is affirmed.


MR. CHIEF JUSTICE MITCHELL, dissenting :

I would reverse this judgment. The taxation of land not within the territorial limits of the state is admittedly beyond the legislative power, and the taxation of the value or the proceeds of such land, under whatever form or disguise it is sought to be exercised, is upon the border line of questionable jurisdiction and should be scrutinized closely with every presumption against its validity.

But even if the lands in this case were within Pennsylvania there was no proper conversion.   They were devised as land to devisees named, and there is in the will no direction to sell but only a power and discretion to do so when the executors should deem it expedient.   The learned court below founded its judgment on the doctrine of necessity to carry out the will.   But on this point the case falls clearly within the principle of Hunt's Appeal, 105 Pa. 128 (141), where it was held, "the most that can be said is that the testator made a mistake as to the extent of his estate, and a sale of his real estate became necessary in order to pay his debts.   But this is not to the purpose.   The scheme of his will did not contemplate this, and if by reason of the depreciation of his property, or for other causes a necessity to sell the real estate arose which was not foreseen by the testator, it will not work a conversion for the obvious reason that a conversion is always a question of intent."

The necessity to sell which effects a conversion is one which must have been contemplated by the testator in order to carry out the scheme of his will, not a necessity as a matter of fact arising out of the actual circumstances of the estate after his death.   Suppose the personalty though insufficient to pay the pecuniary legacies at the time of testator's death had so increased in value as to be sufficient before the time of payment, clearly there would have been no conversion which would require or justify an exertion of the executor's discretion which would subject these devisees' land to the payment of this tax; and equally so in the contrary case of a sufficiency of personalty at the death and a subsequent decline in value.   Either case would come exactly within the quotation above made from Hunt's Appeal.   To attribute the necessity to sell as within the contemplation of the testator seems to me like attributing the gift of foresight to those who are wise after the event. The testator gave large pecuniary legacies, but he had personal estate of still larger nominal value, and with this knowledge of his affairs he gave his executors not a direction but only a discretion to sell.   Clearly he did not contemplate a sale as a necessity but only as a contingency to be dealt with in the discretion of his executors.

I regard the present decision as at variance with the princi-

ples of all our later decisions, particularly Hunt's Appeal, supra; Handley's Estate, 181 Pa. 339; Yerkes v Yerkes, 200 Pa. 419; Sauerbier's Est., 202 Pa. 187; and Cooper's Est., 206 Pa. 628.