# Brinkerhoff et al. v. Martin et al., Trustees

*Caleb S. Brinton,* for plaintiffs.

*F. J. Templeton,* for defendants.

REESE, P. J., November 24, 1936.—This is a case stated in an action of assumpsit brought by plaintiffs to recover the purchase price of certain premises which defendants agreed to buy from plaintiffs. It is contended by defendants that plaintiffs cannot comply with their agreement to convey a "good, clear and marketable title" to the premises.

It appears that one of plaintiffs' predecessors in title acquired the premises in 1883 by deed of conveyance from James Dunlap, executor of the last will and testament of Sarah Dunlap, who died July 30, 1882, seized of the premises in fee simple.

Sarah Dunlap's will, after directing the payment of debts and making certain specific bequests, provided as follows:

"As to all the rest and residue of my estate I give and bequeath to my niece Mary J. Kennedy ¼ of the residue; I give and bequeath to my niece Margaret Kennedy ¼ of the residue; I give and bequeath to my nephew James D. Rea ¼ of the residue; I give and bequeath to William J. Mains, James M. Mains, John D. Mains, Robert R. Mains, Jane M. Hays and Margaret Fuller, children of my niece Sarah Jane Maine, Deceased, ¼ of the residue, share and share alike.

"I empower my executor hereafter named to make sale of any real estate I may be possessed of at the time of my decease and transfer the title as well and fully as I could do if living.

"I do hereby constitute and appoint James Dunlap of Penn Township, Cumberland County, State of Pennsylvania, to be the executor of this my last will and testament."

Under the authority or power contained in the will, the executor conveyed the premises to one William R. Titler for $3,400, which sum was received and accounted for by the executor in his final account, which was confirmed by the orphans' court. The final account showed a balance for distribution of $42,188.62, and this sum was distributed among the residuary legatees and devisees named in the will of Sarah Dunlap. The residuary legatees and devisees executed and delivered to the executor a release in full, which is recorded in the office of the recorder of deeds.

Defendants rely on Eberly v. Koller, 209 Pa. 298, in which it appeared that a testator by his will provided:

"I hereby authorize and empower my executors to sell all, or any of my estate, real or personal, not herein specifically bequeathed or devised, either at public or private sale, and to execute and deliver good and sufficient deeds for all real estate sold, for the purpose of executing this will."

The executor sold the property to defendant, who refused to accept the deed, alleging that plaintiff had no

power to make title. The Supreme Court affirmed the judgment entered for defendant on the opinion of the lower court, which held that since the will had effected no conversion of the realty there was no necessity to sell the real estate, and hence the executor could not make title.

The Supreme Court has held, in Hunt's Appeals, 105 Pa. 128, and many times since, that in order to work a conversion there must either be (1) a positive direction to sell, or (2) an absolute necessity to sell in order to execute the will, or (3) such a blending of real and personal estate by testator in his will as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money.

Prior to section 30 of the Fiduciaries Act of June 7, 1917, P. L. 447, which provides that a purchaser from an executor takes real estate free and discharged of any obligation to see to the application of the purchase money, it was undoubtedly true that, unless the will effected a conversion, real estate, upon the death of its owner, became charged with the lien of his debts, and hence an executor, under a mere discretionary power, could not convey a clear title, inasmuch as the debts constituted liens.

On the other hand, if the will did effect a conversion the real estate could be sold as personalty and was not subject to the lien of debts. Hence the executor could make title free of liens.

Under section 30, supra, no conversion is effected unless it is done as authorized in Hunt's Appeals, supra, nor does section 30 take away from general creditors the land as security in the absence of such conversion. The lien of a diligent creditor is transferred to the purchase money upon the executor's exercise of a discretionary power of sale: Davidson, Executrix, v. Bright, 267 Pa. 580.

We fail to see why it was necessary for the Supreme Court to hold in Eberly v. Koller, supra, that an executor has no power to sell real estate unless there has been a

conversion. It is true that, if there was no conversion (prior to section 30), an executor could not, because of the lien of general debts, convey a "good" title or a "clear" title. But this hardly justifies the conclusion that where there was no conversion the executor could convey no title whatsoever.

That the decision in Eberly v. Koller, supra, went further than was necessary is indicated in Livingood, Admr., v. Heffner, 9 Sadler 526. In that case no conversion was effected, the executor had merely a discretionary power to sell, and there was no question as to distribution or the rights of creditors. It was held that the executor could vest a good title in the purchaser, against whom judgment for the purchase price was entered. In speaking of the will and the power given to the executor, the Supreme Court said, at page 531:

". . . there was certainly no positive direction to sell; it may be that there was no technical conversion of the realty into personalty; this we are not called upon to decide; the question here is one of title, not of distribution; whether there was or was not a conversion, it is unnecessary to say—if upon a proper construction of the will, the executor was authorized to sell the land."

The foregoing excerpt was quoted with approval in Miller v. Sheaffer et al., 75 Pa. Superior Ct. 584, 588.

We readily admit that whether a conversion has been effected is important in passing on such questions as distribution of an estate: Brennan's Estate, 277 Pa. 509; inheritance taxes: Chamberlain's Estate, 257 Pa. 113; the right to rents from realty: Neumann's Estate, 41 Pa. Superior Ct. 279; the lien of inheritance taxes: Shugars et al. v. Chamberlain Amusements Enterprises, Inc., 284 Pa. 200; or the liens of creditors: Davidson, Executrix, v. Bright, supra.

At the time of the will involved in the case at bar, it would seem that under a discretionary power an executor could convey title to land, but subject to the lien of general debts if no conversion had been effected by the

will. If there were no debts or other liens, why could he not convey, under a discretionary power, a clear, marketable title without regard to whether there was a conversion or not? In Eberly v. Koller, supra, it was held that he could not, and in Livingood, Admr., v. Heffner, supra, it appears that he could, and that lands subject to a power of sale pass to the devisee until the power is exercised: Neumann's Estate, supra.

The decision in Livingood, Admr., v. Heffner, supra, seems preferable, but, fortunately, there are other reasons for the conclusion we shall reach. Even admitting the correctness and applicability of Eberly v. Koller, it appears that in the present case the executor sold the property. Even if there was no conversion effected by the will, there was a conversion when the executor sold the property. Where there is no conversion under a will, conversion does not take place until a sale is actually made: Shugars et al. v. Chamberlain Amusements Enterprises, Inc., supra.

"A bare power of sale, such as a discretionary power, will not work a conversion until exercised": Chamberlain's Estate, supra.

The conversion effected by the sale by the executor was ratified and confirmed by the residuary legatees and devisees when they accepted from the executor the purchase price of the land so sold.

Furthermore, the residuary legatees and devisees were the only persons who could have raised any question as to the propriety of the executor's sale of the land, since there were no unpaid creditors. By accepting the purchase price of the land upon distribution of the estate and delivery of a release to the executor, the residuary legatees and devisees estopped themselves and all persons claiming under them from denying the power of the executor to convey the premises.

Finally, it appears that the premises in question have been, without interruption since the sale by the executor in 1883, in the possession of his purchaser and the latter's

several successors in title, including present plaintiffs. Certainly in that time plaintiffs have acquired title by adverse possession.

Hence we conclude that plaintiffs are ready and able to convey a good and marketable title, and, in accordance with the stipulation in the case stated, we make the following order:

And now, November 24, 1936, judgment is hereby entered in favor of plaintiffs and against defendants in the sum of $4,380, conditioned upon execution and delivery by plaintiffs to defendants of a deed to the premises in question, with clause of general warranty.

From Francis B. Sellers, Carlisle.