## Brennan's Estate.

*Decedents' estates—Real estate—Lien—Suit within year—Failure to index summons—Wills—Conversion.*

1. Where suit is brought against a decedent's estate within one year from death, but the action is not indexed within the year, as required by the Act of June 7, 1917, P. L. 447, the lien of the debt is lost at the end of the year from the death.

2. In such a case the real estate cannot be claimed to have been converted into personal estate, where there was authority in the will to sell, but no positive direction to do so; where there was no blending of real and personal estate so as to create a fund for payment of legacies and debts; and where there was no necessity to sell to execute the will.

Audit of executor's account. O. C. Schuylkill Co., Jan. T., 1922, No. 22.

*James B. Reilly* and *B. J. Duffy*, for accountant.

*R. J. Graeff*, for creditor.

WILHELM, P. J., Sept. 11, 1922.—This audit came on to be heard March 20, 1922, pursuant to due notice.

From the evidence we find the following facts:

I. David J. Brennan died on or about Oct. 24, 1918, testate, married, leaving to survive him his wife, Bridget Brennan, and the following children: 1. Margaret Brennan Pottertan, a daughter. 2. Alice Brennan, a daughter. 3. Mary Brennan Ruikenburg, a minor daughter, having for her guardian Bridget Brennan. 4. Christopher Brennan, a minor son, having for his guardian Bridget Brennan. 5. Catharine Brennan, a minor daughter, having for her guardian Bridget Brennan.

II. By his last will and testament the testator bequeathed to his wife one-half of his estate so long as she remained his widow, and the other one-half of his estate he bequeathed to his children above mentioned, giving his wife, who was appointed his executrix, power of sale.

III. The widow has elected to take under the will.

IV. The balance for distribution arises from real estate, which indicates the executrix exercised the power of sale, and amounts to $2247.58.

V. The claim of Christ Wenzel, to the use of William B. Shugars, for $1895.50 was presented in the form of a judgment under date of Sept. 20, 1920. The certificate of the prothonotary contains the following entries:

Defendant.            Plaintiff

"Brennan David J., Decd., Christ Wenzel to use of Wm. B. Shugars 210 March 1919 May 18, 1920 $1895.50.

"Brennan David J., Decd., Same 210 March 1919 9/20/1920 Judgment *sur* verdict.

"Brennan David J., Dec. Shugars W. B. 210 March 1919 5/19/1921 *Remittitur*," which shows that the judgment was entered on Sept. 20, 1920.

It is asserted that this claim lost its lien upon the real estate because the action for the recovery thereof, although commenced on Feb. 14, 1919, was not indexed in the judgment index until May 18, 1920, which was more than a year after the date of the death of the testator. Therefore, the lien of this claim upon the fund arising from the sale of real estate is lost. It is not claimed that the summons in *assumpsit*, issued to No. 210, March Term, 1919, on Feb. 14, 1919, was indexed within the period of one year after the date of the death of the testator, in the prothonotary's office, in accordance with the Act of 1917, and defendant asserts that, notwithstanding suit was commenced to recover judgment on this claim within a year after the death of this decedent, the plaintiff failed to direct the prothonotary by præcipe to index the same in the judgment index as other liens are indexed, and his failure to proceed as the statute requires has the effect of his claim losing its lien.

Section 15 of the Fiduciaries Act of June 7, 1917, P. L. 447, provides that no debts of a decedent shall remain a lien on the real estate longer than one year after the decease of the debtor, unless within said period an action for the recovery thereof be brought against the legal representative and such action be indexed against the decedent and such legal representative in the judgment index of the county. And section *D* of said act provides for the procedure which may be had to secure by the prothonotary the indexing of said action.

If the statutory remedy here set out is not strictly followed, no debts of a decedent shall remain a lien on his real estate longer than one year after his decease. Therefore, the claimant not having proceeded as the act requires, the lien of his debt on the real estate has been lost and his claim cannot be allowed as a lien against the real estate. But it is contended that the will of David J. Brennan worked a conversion of his real estate because there is no possible way in which his will could be carried into effect without a sale of the real estate.

An examination of the will shows that the first disposing clause devises and bequeaths to the wife, Bridget Brennan, one-half of the estate so long as she remains the widow of the testator, and in the event of her remarriage, then one-half of the estate aforesaid shall go to his children, share and share alike. By the next bequest, one-half of the estate is devised and bequeathed to his children, to be equally shared among them. The succeeding clause appoints his wife testamentary guardian of all his children who have not attained the age of twenty-one years. Following this, the testator authorizes and empowers his executrix, Bridget Brennan, his wife, to sell and dispose of any or all of his property and make and execute deeds of conveyance, and he further authorizes and empowers her to sell and dispose of his property to the person or persons offering the highest price and to divide the proceeds as before directed in the will.

The remaining clauses of the will have no bearing upon the question of equitable conversion, and the reason for the remaining clauses is obscure unless it was the intention of the testator to use both the principal and income of one-half of his estate, "if the same shall be necessary for her (widow) maintenance and support;" and if this one-half of the estate is exhausted in that manner, she is to take one-half of the remaining portion of his estate and the children one-half of the remaining portion, or one-fourth of the whole

2 D. & C.

estate. But it is unnecessary at the moment to construe this portion of the will, because the question immediately under consideration is that of equitable conversion.

As we read this will, the testator gives one-half of his estate to his widow during widowhood; the other half to his children in equal shares. He authorized his widow, who was his executrix, to sell his real estate, and he enjoined her to sell at the highest price, and, upon making sale, to divide the proceeds thereof.

In this will we have no positive direction to sell; there is no necessity to sell in order to execute the will; neither is there a blending of real and personal estate, clearly showing that the testator intended to create a fund out of both real and personal property and bequeath the same as money. Reading the will as a whole, we find that the testator divided his estate between his wife and children in such manner as his affection dictated, and gave to his wife as executrix the power to sell, and advised or required her to sell for the best price she could obtain; and there is nothing in the will that indicates that he intended the immediate conversion of his estate into money and the division of the money, unless it appeared to her to be for the best interests of his family that there should be a sale.

The circumstances surrounding the testator at the time of the execution of the will would not indicate that he contemplated the sale of his property and a division thereof until it was necessary for the better protection of his family. His estate is not large; the transfer tax indicates that his total estate amounted to about $7000, an amount which, if undivided and used as a whole, whether in real estate or personal property, would be quite substantial for the purpose of caring for his wife and children, three of whom are minors, but if divided and the several portions and estates handled separately could not be used advantageously for their care and maintenance. The testator knew this, and common experience would indicate that he intended that his wife, in whom he seemed to repose confidence, should hold this estate intact as he had left it, and thereby hold the family together and only sell it when there was necessity therefor.

How, then, can it be said that there is a necessity here to sell to carry out the provisions of the will, or that the testator intended his property to devolute as personalty? Numerous authorities could be cited to support this view, but it is unnecessary, except that of Cooper's Estate, 206 Pa. 628, and Davidson v. Bright, 267 Pa. 580, where it is said: "The mere blending of real and personal estate without a clear and indubitable intent to create a common fund and bequeath it as money will not constitute a conversion." And again: "When it is manifest that each and every provision of the will can be carried out without a sale of real estate, and the effort is to derive an intention to convert from the fact of blending the real and personal estate, such inference cannot be supported except as it rests on something more than a mere failure on the part of the testator to distinguish between two kinds of property, directing that his estate be divided into shares and sold and distributed."

This claim cannot be allowed because it is not a lien upon the real estate; neither can it be allowed upon the theory that the will of the testator worked a conversion of the real estate into personal property. Therefore, the balance remaining in the hands of the executrix should be distributed as the will directs.

The apparent ambiguity in the will, as noted above, it is believed, arises from the fact that a printed form was used by the scrivener, who seemed to be of the opinion that it was necessary, because the printed form contained a

Brennan's Estate.

provision as to the residuary of the estate, to make it a part of the will. And an effort was made to have the printed residuary clause conform to the former parts of the will. Using printed forms for wills is a vicious practice, because it opens every testamentary paper to the danger of interlineations after the will is executed, and in many cases raises an ambiguity that was never intended by the testator. The evil of the practice is here well illustrated. If this will had not been written upon a printed form, the insertion of a residuary clause would not have been attempted, because it was not necessary, the testator having disposed of the whole of his estate in former clauses.

Therefore, as we read this will, it was the intention of the testator to give one-half of his estate to his wife for life or during widowhood, and the other half of it to his children, and the balance in the hands of the accountant should be distributed accordingly.

From M. M. Burke, Shenandoah, Pa.