## Ellis v. Commonwealth Trust Company et al.

*Decedent's estate—Realty—Sale — Implied power—Conversion—Necessity —Distribution in cash—Blending of realty and personalty—Power of executors to convey—Costs.*

1. Where a will directs the estate to be divided into two equal shares and specifies how each share is to be distributed among various beneficiaries, all such bequests being in money, it discloses such necessity for converting the real estate into cash in order to make distribution, and such blending of realty and personalty, as to indicate an intention that the whole estate shall be dealt with as personalty and gives the executors implied power to sell the realty and pass a good title thereto.

2. Where the executors agree to sell realty belonging to the estate and the contest is to determine whether they can pass a good title, costs will be imposed on the estate.

Petition for declaratory judgment to determine power of executors to sell real estate. C. P. Dauphin Co., March T., 1927, No. 438.

*Karl E. Richards*, for plaintiff.

*George Ross Hull* (of *Snyder, Miller & Hull*), for defendants.

Fox, J., May 25, 1927.—This is a petition for a declaratory judgment under the Act of Assembly approved June 18, 1923, P. L. 840, known as the Uniform Declaratory Judgments Act, praying that we adjudge and declare the rights, status and other legal relations of the petitioner, Harry T. Ellis, and the Commonwealth Trust Company and Russell H. Lindsay, executors of the last will and testament of Martha Alice Hess Calder, late of the City of Harrisburg, Dauphin County, Pennsylvania, deceased, under a contract in writing entered into between the said executors and the petitioner, whereby the former were to convey to the .petitioner by good and sufficient deed in fee simple, for the consideration therein mentioned, a certain tract of real estate, the petitioner having paid on account thereof the sum of $200, the balance to be paid on delivery of the deed. A deed was tendered to the petitioner by the executors, but the petitioner refused to accept the same, contending that the said executors, under the terms and provisions of the said last will and testament of the above-named decedent, do not have the power to convey the said real estate of the decedent, and that the deed tendered is, therefore, not a good and sufficient deed to the premises in fee simple as called for by the said contract.

The testatrix, by her will, first provides for the creation of a trust of $16,500, "which shall be taken out of her estate," and $500 is bequeathed to her sister Catherine. "After this is done, the estate shall be appraised and divided into two equal shares." The first share is disposed of by eleven separate bequests, ranging from $500 to $4000; some of them to educational and other charitable institutions, and two of them to be known as the "James Calder Fund," one as the "A. Russell Calder Fund," one as the "Ellen Winebrenner Calder Fund," and another as the "Calder Fund." She disposes of the other half by giving to the First Church of God of Harrisburg $1000, and another bequest of $1000 to the Home Missions of the Church of God, "both funds to be known as the 'Hess Funds,'" and the balance to be divided in equal shares among her sisters, Fannie, Carrie, Catherine, and her nephew, Russell Lindsay, after a payment of $2000 to her half-sister, Linnie A. Hess. She further provides: "At the death of any of my sisters their share shall go to Russell Lindsay or in case of his death and he leaves no children his portion shall go to my sisters Fannie, Carrie and Catherine. At the death of

my sister Carrie, her share goes to her son, but out of that share one thousand dollars must be paid over to her husband Alex. M. Lindsay if he survives. At the death of my sister Catherine, her share shall go to my nephew Russell Lindsay, but out of that share one thousand dollars must be paid to her husband Dr. Horace W. McKenzie if he survives. The second half of the estate, outside of the bequests I have made, I wish to descend to my nephew Russell Lindsay and his children. Should he leave no issue, then it shall go to the Churches of God College at Findlay, Ohio, one half and the other half to the Church of God Home Missions and shall be known as the 'Alice Hess Calder Funds.' "

The petitioner prays that we answer the following questions:

(*a*) Do said executors have the power to sell and convey said real estate to the petitioner?

(*b*) Is the delivery of a fee simple deed to said premises, duly executed and acknowledged by said executors as such, a compliance with the terms of said contract?

(*c*) Is the petitioner, under the circumstances, entitled to the return of the money he has paid on account of the purchase price?

The petitioner contends that the executors have no power to dispose of the real estate under the will, for the reason that there is no absolute direction to sell, that no necessity to sell appears from the will itself, and that there is no blending of the real and personal estates, which clearly shows that she intended to create a fund out of both and to bequeath the said fund as money.

The respondent contends that there is an implied power to sell the real estate given to the executors, which implied power arises out of (*a*) a necessity of converting her estate into cash in order to distribute the same in the manner in which she has directed; and (*b*) that there is such a blending of her real estate into her personalty as to indicate clearly her intention that the whole should be dealt with and distributed as personalty.

The question for our determination is: Do the executors, under the terms of the will, have power to sell the real estate of the decedent, and can they, under the will, give a good and sufficient deed?

In Hunt's and Lehman's Appeals, 105 Pa. 128, Mr. Justice Paxson, in writing the opinion of the Supreme Court, said: "There is no direction here to sell; only a power. It ought to be settled by this time that, in order to work a conversion, there must be either, first, a positive direction to sell; or, second, an absolute necessity to sell in order to execute the will; or, third, such a blending of real and personal estate by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate and to bequeath the said fund as money."

This settled rule has never been disturbed, and it is the law that when it clearly appears by the will of a testator that he thereby created a fund raised out of both real and personal estate and such fund is bequeathed as money, there is a blending of real and personal estate, and, therefore, an equitable conversion. An equitable conversion operates to take the title of the real estate from the heirs and vests it in the executors for the purpose of sale.

In Vanuxem's Estate, 212 Pa. 315, the Supreme Court said: "But conversion will take place, though the language confers a mere discretionary power of sale, where it is not possible to execute certain provisions of the will without a sale of the real and personal property into money. 'If a testator authorizes his executors to sell his real estate and to execute and deliver to the purchasers deeds in fee simple, and it is clear from the face of his will that it was his intention that the power so conferred by him should be exercised,

it will be construed as a direction to sell and operate as an equitable conversion. If, in addition to this clear intention of the testator, it plainly appears that effect cannot be given to material provisions of the will without the exercise of this power, the conclusion is irresistible that a conversion is as effectually accomplished by the will, and the duties of the executors under it are the same, as if it contained a positive direction to sell:' Fahnestock v. Fahnestock, 152 Pa. 56.

"With these authoritative explanations of the doctrine of equitable conversion as applied in Pennsylvania, we turn to the will of the testator to ascertain his intent and his scheme of distribution. In brief, he gives general pecuniary legacies upwards of $700,000; devises certain of his real estate to two of his sisters for life, and at their death directs a sale by the executors, and devises and bequeaths the residue of his estate to his two sisters and three brothers-in-law. Whenever it is necessary or expedient for any purpose of the estate, of administration, distribution or otherwise, the executors are given full power and discretion to sell any or all the real estate. The pecuniary legacies are to be paid before those to whom the residuary is given shall receive anything, because it is only what remains of the estate after the specific legacies are paid that passes as residue or remainder. These legacies pass to the legatees as money. The testator intended them to be paid in cash. There is nothing in the language of the will to show they are to be paid in any other way. Their character is personalty. He must have foreseen the necessity for a sale of his real estate to carry out his scheme of dividing his estate by first bestowing gifts upon the beneficiaries, in the form of pecuniary legacies, else how were they to be paid? He, therefore, gives his executors full power to sell the real estate whenever a sale is necessary for any purpose of the estate, of administration, distribution or otherwise. It is true the power is discretionary, not direct and positive, but the intent is manifest that it is to be exercised if the purposes of distribution require it. The power is, therefore, to be construed as a direction to sell."

From a reading of the will, it is obvious that there was no positive direction under the will to sell the real estate, as the words used, viz., "All real estate can be sold by my executors," standing by themselves, are not strong enough to create a positive direction. We must, therefore, look to the other parts of the will to see whether or not there is an absolute necessity to sell in order to execute the will, or whether there is such a blending of real and personal estate by the testatrix in her will as to clearly show that she intended to create a fund out of both real and personal estate and to bequeath the said fund as money.

In considering the whole of the will, it is manifest that the testatrix contemplated a sale of her real estate so as to make distribution in money as she provided. She divides the estate into shares; all of the bequests are in money and she earmarks many of the bequests as "funds." She provides in one bequest of $3000 that the money be used in the purchase of land for a new church, or the erection of a new church building. In the disposition of the first share, she provides that if there be a surplus, it shall be divided between three charitable institutions, one of which shall apply its share to the payment of its indebtedness. As to the latter share to her sisters et al., it is not a devise, but a bequest of money; it cannot be carried out in the division of real estate. She also provides that: "To avoid loss in selling property and the disposition of the assets, two years can be taken to make a division or settlement." All of which shows that the testatrix by her will intended to create a fund raised out of both real and personal estate, and bequeathed

said fund as money, and for that purpose blended her real and personal estate.

There was, therefore, a conversion which took the title of the real estate from the heirs and vested it in the executors for the purpose of sale, so as to carry out the plan of distribution of the testatrix. The terms of the will cannot be carried out without exercising the power of sale, and, in connection with the clear intention of the testatrix, effect cannot be given to the material provision of the will without the exercise of the power of sale. The necessity to sell arises: Fahnestock v. Fahnestock, 152 Pa. 56; Severns's Estate, 211 Pa. 65.

We answer the petitioner's questions as follows:

(a) The executors do have the power to sell and convey said real estate.

(b) The delivery of a fee simple deed to said premises, duly executed and acknowledged by said executors as such, is a compliance with the terms of said contract.

(c) The petitioner, under the circumstances, is not entitled to the return of the money he has paid on account of the purchase price.

Counsel for the estate has suggested that it would be only fair to impose the costs involved in this proceeding upon the estate, which suggestion we shall follow.

And now, May 25, 1927, it is hereby ordered, adjudged and decreed that the Commonwealth Trust Company and Russell H. Lindsay, executors of the last will and testament of Martha Alice Hess Calder, have power under the will to sell the real estate of the said decedent; that a deed, executed, acknowledged and delivered by the said executors is a good and sufficient compliance with the terms of the contract made by them with the petitioner, H. T. Ellis, and that the latter is not entitled to the return of the money paid by him on account of the purchase price named in the agreement of sale, for the reason that he is legally bound to accept the deed tendered by the said executors and to pay the balance of the purchase price agreed upon; that the costs of this proceeding be paid out of the estate of the said decedent.

From Homer L. Kreider, Harrisburg, Pa.